**9**

T. Scott Belden, State Bar No. 184387
*sbelden@beldenblaine.com*
T. Todd Egland, State Bar No. 240911
*tegland@beldenblaine.com*
BELDEN BLAINE RAYTIS, LLP
5100 California Avenue, Suite 101
Bakersfield, California 93309
Telephone: (661) 864-7826
Facsimile: (661) 878-9797

Proposed Attorneys for Debtor-in-Possession
Club One Acquisition Corp.

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re | Case No.: 15-14021-B-11 |
| CLUB ONE ACQUISITION CORP., | Chapter 11 |
| Debtor. | DCN No.: BBR-2 |
| | **DEBTOR'S APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF ATTORNEYS PURSUANT TO 11 U.S.C. §327(a) EFFECTIVE AS OF THE PETITION DATE** |
| | Date:    n/a |
| | Time:    n/a |
| | Judge:  Honorable René Lastreto, II |
| | Ctrm:   U.S. Courthouse |
| | Department B, 5th Floor |
| | 2500 Tulare Street, Courtroom 13 |
| | Fresno, CA 93721 |

The *Application for Order Authorizing Employment of Attorneys Pursuant to 11 U.S.C. §327(a)* filed by Club One Acquisition Corp., Debtor and Debtor-in-Possession ("the Application"), represents:

### I.    INTRODUCTION

1.    Club One Acquisition Corp. ("Debtor") filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code on October 14, 2015.  A trustee has not been sought or appointed in Debtor's case.

2.    Debtor wishes to employ Belden Blaine Raytis, LLP ("BBR") as its attorneys during this bankruptcy proceeding.

3.    Debtor selected BBR to represent it in its Chapter 11 case for the following reasons:

      a.    BBR is familiar with bankruptcy practice and debtor-creditor law;

      b.    BBR is experienced in representing debtors in proceedings filed under Chapter 11 of the Bankruptcy Code; and

      c.    Debtor believes BBR is qualified to act as its attorneys.

4.    The professional services that BBR will render for Debtor include performing all legal services for Debtor directly involved in and related to its Chapter 11 case, including, but not limited to, the following:

      a.    Consulting with principals of Debtor regarding Debtor's goals throughout the Chapter 11 process and the most efficient and effective way to achieve those goals;

      b.    Preparing documents necessary to commence the bankruptcy case;

      c.    Assist in the formulation and proposal of a viable plan;

      d.    Preparing, filing, and prosecuting, as necessary, any and all pleadings related to the administration of the Debtor's Chapter 11 case including, but not limited to, applications to employ professionals, motions for authority to borrow money, compromise claims, and object to claims, but excluding any representation in state court litigation matters.

5.    BBR has been representing Debtor and performing all legal services required by Debtor in these proceedings since Debtor filed its Voluntary Petition.

## II.    ADVERSE INTERESTS AND CONNECTIONS.

Debtor has disclosed to BBR and BBR has disclosed to Debtor the information provided below to allow the Court, the United States Trustee, and creditors, the opportunity to consider BBR's qualifications to be counsel for Debtor:

6.    <u>Interests</u>.  BBR does not have an interest or represent an interest adverse to Debtor or its estate in any of the matters upon which BBR will be engaged and Debtor believes that the employment of BBR will be in the best interest of its estate.

7.    <u>Connections</u>.  BBR does not have any prior connections with Debtor and BBR's only current connection is its representation of Debtor in this Chapter 11 case on the terms described below.  BBR does not have any connections with Debtor's creditors, any other party in interest, or their attorneys and accountants, the United States Trustee, or any person employed in the Fresno Office of the United States Trustee except as follows:

a.    **Connections with the Court**. Other than appearing before the judge in connection with this proceeding, there have been no connections with the Court except for the following:

i.    T. Scott Belden and the Honorable René Lastreto II, have known each other professionally for several years. Judge Lastreto was formally with the firm Lang, Richert & Patch.

ii.    The Honorable W. Richard Lee is a member of the Central California Bankruptcy Association ("CCBA"), and so are some of the attorneys at BBR.  Further, T. Scott Belden, a partner at BBR, was on the Board of Directors for the CCBA from approximately 2003 through 2008.  Judge Lee served on the CCBA Board of Directors with Mr. Belden during this time. T. Scott Belden and Judge Lee have known each other professionally for several years.

iii.    The Honorable Frederick E. Clement is a member of the Board of Directors for the CCBA.  Judge Clement and Mr. Belden have served on the CCBA Institute Program Committee in the past.  T. Scott Belden and Judge Clement have known each other professionally for several years.

iv.    The relationship between BBR and the Court is collegial and does not interfere with BBR's vigorous representation of clients.

b. **Connections with Office of the United States Trustee**.  Other than working with the United States Trustee and individuals employed by the Office of the United States Trustee ("UST") in connection with this proceeding and other matters unrelated to Debtor, there are no known connections to the United States Trustee, or any person employed by the Office of the United States Trustee except:

        i.      *Attorneys for the UST.*  Gregory Powell, Robin Tubesing, and Terri Didion are attorneys for the United States Trustee, Fresno Division. BBR bankruptcy practitioners are acquainted with Mr. Powell and Ms. Tubesing. BBR files and prosecutes Chapter 11 cases where BBR works with attorneys for the UST. Mr. Powell is a member of CCBA and served on the Board of Directors with Mr. Belden in the past. The relationship between BBR and the UST is collegial and does not interfere with BBR's vigorous representation of its clients.

        ii.      *Bankruptcy Analysts for the UST.* Lisa Grootendorst and Kristin McAbee are analysts with the UST.  BBR bankruptcy practitioners who practice in Chapter 11 are acquainted with Ms. Grootendorst and Ms. McAbee.

    c.      **Connections with Other Proposed Professionals of the Debtor**.

Other than working with the other proposed professionals of the Debtor in connection with this proceeding and other matters unrelated to Debtor, there are no known connections to the other professionals except:

        i.      *Restructuring Professionals.* Bill Hughes of GlassRatner Advisory & Capital Group, LLC is the proposed Chief Restructuring Officer for Debtor's affiliate, Club One Casino, Inc.  Debtor and COCI entered into a Casino Management Agreement with pre-petition.  T. Scott Belden has previously employed and worked closely with GlassRatner and George Demos of its firm as business advisors in cases unrelated to Debtor.   GlassRatner and BBR, on a non-exclusive basis, occasionally refer clients to each other when their respective clients need professional services that the other provides. There is no agreement between GlassRatner and BBR regarding referrals and no referral fees nor any kind of financial remuneration paid between GlassRatner and BBR.

        ii.      *Accountants.*  BBR anticipates working with Baker Peterson Franklin, CPA, LLP ("BPF"), Debtor's proposed accountant. There is no agreement between BPF and BBR regarding referrals and no referral fees are paid between BPF and BBR.  BBR has no connections to BPF.

    d.      **Connections with Debtor, Insiders, and Affiliates.**  Other than working with the Debtor, Insiders, and Affiliates of the Debtor in connection with this proceeding, there are no known connections to the Debtor, insiders, and affiliates except:

        i.      *Debtor.*  Debtor retained BBR on or about August 4, 2015, to explore the options of resolving debtor/creditor problems and in preparing for this Chapter 11 case.  BBR has worked with Debtor, its principals, professionals and creditors since that time and currently has a possessory security interest in

the balance of the retainer it received on behalf of Debtor. BBR provided no legal services for Debtor prior to that date and BBR has provided no legal services for COCI or any of its affiliates, shareholders, directors, or officers at any time. COCI has been represented by KDG and KMGI has been represented by Pachulski Stang et al. at all times since BBR's involvement in the matter.

   ii. *Insiders*. Debtor is a 100% shareholder of COCI and owes COCI money for advanced attorneys fees and costs. This amount is currently being calculated. COAC scheduled the amount as $2,758,867.00, but it will be substantially lower than that amount. All stock of COCI is held by Debtor. BBR does not represent COCI. COCI is represented by Mr. Bedoyan and KDG. Additionally, as noted below, COCI paid the retainer funds to BBR for the filing of Debtor's Chapter 11 case. Kyle Kirkland is a director of COAC and COCI and a principal of KMGI, Inc., the major secured creditor. Dana Messina is a former director of COAC, but resigned prior to the bankruptcy filing. Bill Zender, has recently been appointed an independent director of both COCI and COAC. BBR has had no affiliations or connections with Mr. Zender or Bill Zender & Associates, LLC, his company, or KMGI, Mr. Kirkland, Mr. Messina.

   e. **Connections with Creditors and Creditors' Attorneys**. Other than working with the creditors of Debtor and their attorneys in connection with this proceeding, there are no known connections to the creditors and their attorneys except as follows:

   i. *Creditors' Attorneys*.

   A. Hagop T. Bedoyan of Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP represents COCI. Some of the attorneys and staff members at BBR, including T. Scott Belden, were prior employees or partners in KDG. Mr. Belden left KDG in 2013, and none of the former KDG attorneys or staff were involved in any way with any work involving COCI, COAC, or any of its affiliates, officers, or directors.

   BBR and its members have professional interaction with Mr. Bedoyan, his associates, and his staff. Additionally, KDG has paid David Blaine, a partner at BBR, individually, roughly $33,000 in 2014 and 2015 and BBR a one time referral fee of $36,159 in early 2015. None of the matters for which referral fees were paid involved in any way the Debtor, its affiliates individuals and entities and instead arose out of matters or clients that arose out of Mr. Blaine's tenure as a KDG partner. Neither BBR nor any partner of BBR has paid a referral fee to KDG for any reason.

   B. Riley C. Walter, of the Walter & Wilhelm Law Group represents George Sarantos and Elaine Long. Mr. Walter has worked, and is working, with BBR on other ongoing cases unrelated to Debtor. BBR and its members have professional interaction with Mr. Walter.

Mr. Belden and Mr. Walter have known each other professionally for several years. Mr. Belden has also known Jim Betts, counsel for Elaine Long, George Sarantos, and the Club 500 Casino professionally for many years.

ii.    *Creditors.* Other than the connection discussed above with respect to KMGI, BBR has no other connections with any creditor of COAC.

8.    BBR and Debtor do not believe that the above-referenced connections create any actual conflicts of interest or prevent BBR's employment from being authorized by the Court. The above referenced connections will not interfere with BBR's vigorous representation of Debtor.

9.    Other than the matters described above, BBR does not represent any interest adverse to that of Debtor or its estate nor does it have any connections with any creditors of Debtor.

## III.

## POINTS AND AUTHORITIES

10.    The employment of professionals by a Debtor-in-Possession in a Chapter 11 case is governed by 11 U.S.C. section 327:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. . .

11 U.S.C. § 327.

The term "disinterested person" is defined as a person who:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. §101(14).

11.     BBR is neither a creditor of Debtor, an equity security holder, nor an insider. It was not an employee, officer, or director, of Debtor within the last two years, and it does not hold or represent an interest adverse to the estate, and has no interests materially adverse to Debtor or any class of creditors. BBR has disclosed its connections with Debtor and does not believe that any of these connections would interfere with its fiduciary duties to Debtor and its estate. BBR has made it very clear that it represents only the Debtor, and not any principals or affiliates.

12.     Debtor believes that BBR should not be disqualified from representing Debtor unless an actual conflict of interest arises. BBR will withdraw as the attorneys for Debtor if an actual conflict of interest arises during the administration of Debtor's Chapter 11 case. Additionally, the Court will retain jurisdiction over the employment of counsel by Debtor at all times during the administration of the Chapter 11 case filed Debtor to determine if an actual conflict of interest exists or has arisen. See *In re Westwood Shake & Shingle*, 971 F.2d 387, 390 (9th Cir. 1992) and *In re Plaza Hotel*, 111 B.R. 882, 891(Bankr. E.D.Cal. 1990).

**IV.**

**MISCELLANEOUS MATTERS**

13.     Debtor executed a retainer agreement with BBR. A copy is attached as Exhibit "A" to the exhibits filed in support of the Application. The retainer agreement provides for a lien by BBR on the retainer held in trust.

14.     Compensation paid to BBR will be based on its normal and usual hourly billing rates for Chapter 11 cases plus reimbursement for costs incurred as described below. Any compensation paid to BBR from property of the estate, including the retainer paid to BBR, will only be paid after application and approval by the Court. The normal and usual hourly billing rates charged by BBR are:

| | |
|---|---|
| T. Scott Belden, Esq. | $330.00 per hour |
| Other Attorneys | $225.00 - $275.00 per hour |
| Legal Assistants | $65.00 - $125.00 per hour |

15.     Debtor has agreed to reimburse BBR for certain costs incurred based on the actual costs advanced by BBR, except for photocopies and travel expenses. The photocopy charge to Debtor will be $0.05 per page. The travel expenses charged to Debtor for travel outside the Bakersfield area will be in the amount allowed by the Internal Revenue Service as a deductible business expense.

16.     BBR received a retainer of $52,000.00 ($50,000.00 for fees and $2,000.00 cost advance) on behalf of COAC from COCI on or about August 10, 2015. An additional $9,108.50 was paid by COCI on COAC's behalf on September 3, 2015. Before Debtor's petition date, BBR applied $10,813.50 to fees and costs incurred pre-petition leaving a balance on the petition date of $50,294.50. This balance will be held in the BBR Attorney-Client Trust account. The retainer will be used to pay fees and costs incurred by BBR in connection with its representation of Debtor after application and approval by the Bankruptcy Court. BBR claims a lien against the retainer, which is perfected by possession under California law. BBR anticipates that it will file fee applications after the first thirty days of the bankruptcy case and approximately every sixty days thereafter.

17.     The retainer and subsequent payment received by BBR from COCI described above has been reflected in the books and records of both entities as a payment owed by COAC to COCI. COAC had no independent source of funds as it is not an operating entity, necessitating the payment of its legal fee retainer by its wholly owned subsidiary, COCI. The payment of legal fees by COCI is consistent with the past practice of COCI and COAC. Because COCI is COAC's sole income generating asset, there have been no expectations of repayment terms, and the debt generates no interest. A determination of how to resolve this debt between parent and subsidiary will have to be made at a later date. In any event, neither Debtor nor BBR believe that this represents a disqualifying conflict as COCI is wholly owned subsidiary of COAC.

18.     BBR was selected as counsel for COAC because of the experience of its attorneys, including T. Scott Belden (an AV Rated bankruptcy attorney), Todd Egland, Kaleb Judy, and Keri Bland, and its paralegal staff, Isabel Medellin, in some of the larger successful

1   reorganization cases in the Fresno Division and the fact that Hagop Bedoyan and T. Scott

2   Belden have worked together (and opposite each other) on numerous complicated cases (such

3   as the Ennis Homes and Central Valley Processing, Inc. cases).  Although Mr. Belden and his

4   staff have a collegial relation to the KDG attorneys and staff, BBR is cognizant of its

5   obligation to represent COAC only and advise COAC's officers and directors of their fiduciary

6   duties to the estate.

7        19.    The undersigned is the President of COAC and has knowledge of the

8   information included in this Application relating to COAC, KMGI, and COCI.  Mr. Kirkland

9   bases his knowledge of the connections relating to BBR described above on his knowledge of

10  those entities as well as the information provided to him by BBR. To the extent the information

11  relates to COAC, COCI, and KMGI, and the reasons for the retention of BBR, he provides

12  such information under penalty of perjury under the laws of the United States.

13       WHEREFORE, Debtor requests that it be authorized to employ BBR as its attorneys of

14  record to render services in the areas described above effective on the Petition Date with

15  compensation to be paid as administrative expense in such amounts as the Court may

16  determine and allow.

17  Dated: November 10, 2015              Club One Acquisition Corp.

18

19                                By: _____
                                       KYLE R. KIRKLAND, President,
20                                     Club One Acquisition Corp.

21  **Prepared by:**

22  BELDEN BLAINE, RAYTIS, LLP

23

24  By: _____
        T. SCOTT BELDEN, Partner

25

26

27

28

9