WALTER & WILHELM LAW GROUP
a Professional Corporation
Riley C. Walter #91839
Michael L. Wilhelm #101495
Holly E. Estes #276933
205 E. River Park Circle, Ste. 410
Fresno, CA 93720
Telephone:   (559) 435-9800
Facsimile:    (559) 435-9868
E-mail:       rileywalter@W2LG.com
E-mail:       mwilhelm@W2LG.com
E-mail:       hestes@W2LG.com

Co-Counsel for Elaine Long and George Sarantos

BETTS, RUBIN & MCGUINNESS
James Betts #110222
907 Santa Fe Avenue, Suite 201
Fresno, CA  93721
Telephone:   (559) 438-8500
Facsimile:    (559) 438-6959
E-mail: br@bettsrubinlaw.com

Co-Counsel for Elaine Long

CORNWELL & SAMPLE
Stephen Cornwell #40737
7045 No. Fruit Ave.
Fresno, CA 93711
Telephone:   (559) 431-3142
Facsimile:    (559) 436-1665
E-mail: steve@cornwellsample.com

Co-Counsel for George Sarantos

# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>CLUB ONE ACQUISITION CORP,<br><br>   Debtor in Possession.<br><br>TAX ID:    20-8422320<br>Address:    11150 Santa Monica Blvd,<br>            Suite 700<br>            Los Angeles, CA 90025 | CASE NO.  15-14021<br>DC No.: WW-3<br>Chapter 11<br><br>Date:   December 22, 2015<br>Time:   3:00 p.m.<br>Place:  2500 Tulare Street<br>        Fresno, CA  93721<br>        Courtroom 13<br>Judge:  Honorable René Lastreto II |

# MOTION FOR SUBSTANTIVE CONSOLIDATION OF BANKRUPTCY CASES
# 15-14017 AND 15-14021

TO THE HONORABLE RENE LASTRETO, II, U.S. BANKRUPTCY JUDGE:

Elaine Long ("Long") and George Sarantos ("Sarantos") (together "Creditors"), by and through their counsel, Walter & Wilhelm Law Group, hereby move this Court for an order substantively consolidating the above captioned Chapter 11 case, CLUB ONE ACQUISITIONS CORP. ("COAC"), with that of Case No. 15-14017 (the "COCI Case") CLUB ONE CASINO, INC. ("COCI"). This Motion is made pursuant to the following points and authorities and any oral argument presented at the hearing hereon.

## MEMORANDUM OF POINTS AND AUTHORITIES

A.  Background Facts

1.  Sarantos founded COCI in 1995, along with Charles "Bud" Long, each holding 50% of the shares. Declaration of George Sarantos In Support Of Opposition To Motion To Use Cash Collateral And Grant Adequate Protection, And Opposition To Stipulation Re: Final Order Authorizing Final Cash Collateral Use And Granting Adequate Protection [DC- 78] ("Sarantos Declaration"), pg. 2; and Declaration of Kyle Kirkland in Support of Motion to Use Cash Collateral and Grant Adequate Protection [DC-9] (the "Kirkland Declaration"), pg. 2.

2.  In 2002, Bud Long transferred his 50% interest in COCI to his wife, Elaine Long. Sarantos Declaration, pg. 2; Kirkland Declaration, pg. 2.

3.  In July 2006, Sarantos, Long, and Kyle Kirkland ("Kirkland"), acting on behalf of Kirkland Messina, Inc., signed a letter of intent providing for a new entity to purchase COCI from Sarantos and Long for $27,000,000.00. Sarantos Declaration, pg. 2; Kirkland Declaration, pg. 3. The sale was very highly leveraged.

4.  COAC was thus created for the sole purpose of holding the shares of COCI. Sarantos Declaration, pg. 3; Kirkland Declaration, pg. 3. COAC is a California S-corporation owned 40% by Kyle Kirkland, 40% Dana Messina ("Messina"), 17% by

George Sarantos, and 3% by Haig Kelegian. Kirkland Declaration.

5.  The sale was concluded in 2008 under the terms of a certain Acquisition Agreement. Kirkland Declaration, pg. 3.

6.  In order to finance the 2008 sale, COAC sought and obtained financing for $22,500,000 from D.B. Zwirn Special Opportunities Fund. L.P., which later became Fortress Value Recovery Fund I LLC ("Fortress"), a loan which matured in 2012. Sarantos Declaration, pg. 3. COAC claims to have pledged the COCI shares as collateral for the loan, and for which Kirkland and Messina were jointly and severally liable for a $7,000,000 personal guarantee (subsequently released by Kirkland and Messina when KMGI, Inc. acquired the Fortress loan). Sarantos Declaration, pg. 3; Kirkland Declaration. Both COAC and COCI are obligors on the Zwirn/Fortress/KMGI loan.

7.  As a part of the sale, Sarantos and Long each received certain cash amounts and each carried a Seller Note in the amount of $2,500,000 ("Seller Carryback Notes"). Sarantos Declaration, pg. 2. In addition, Creditors left some cash behind which was to be accounted for in the purchase price adjustment to be paid upon completion of an audit on the books (the "PPA") following the sale. Sarantos Declaration, pg. 2. The PPA was to address several factors, including the amount of cash retained by COCI on the closing date that was to be paid to Creditors. Sarantos Declaration, pg. 2.

8.  Zwirn/Fortress, in providing financing for the sale, required Sarantos and Long to enter into a Subordination Agreement. Sarantos Declaration, pg. 2. The Subordination Agreement provided that, as long as COAC and COCI had a minimal amount of cash on hand, and as long as the Zwirn/Fortress loan was not in default, interest payments on the Seller Notes could be made to Sarantos and Long even before the Zwirn/Fortress loan was paid in full. Sarantos Declaration, pg. 2.

9.  Almost immediately following COAC's 2008 purchase of Sarantos' and Long's shares in COCI, a dispute arose between COAC and Sarantos/Long regarding

the PPA. Sarantos Declaration, pg. 2. Letters were exchanged between the parties in May and August of 2008 in which each provided their calculations regarding the PPA. Sarantos Declaration, pg. 2. An agreement could not be reached, and Creditors filed their demand for AAA Arbitration in December of 2008. Sarantos Declaration, pg. 2.

10. In July 2011, the PPA arbitration was resolved entirely in favor of Sarantos and Long, resulting in an arbitration award totaling $1,966,187. Sarantos Declaration, pg. 3; Request for Judicial Notice in Support of Opposition to Motion to Use Cash Collateral and Grant Adequate Protection, and Opposition to Stipulation re: Final Order Authorizing Final Cash Collateral Use And Granting Adequate Protection [DC-77] ("Request for Judicial Notice"), Exhibit A (the "Arbitration Award"). The Arbitration Award included the PPA ($1,000,513), plus interest, attorneys' fees, costs and expenses. Arbitration Award, Exhibit A. The Arbitrator, after nine days of testimony, found Kirkland and Messina to have given evasive and inconsistent testimony, grossly misleading statements and "questionable conduct in submitting re-engineered financial statement to Buyer's lender." *See* Arbitration Award, Exhibit A, pg. 17.

11. In 2011 the Arbitration Award was reduced to a civil judgment in the amount of $1,988,923 ("California Civil Judgment"). Sarantos Declaration, pg. 3. The California Civil Judgment included the Arbitration Award amount ($1,966,187), plus interest. Sarantos Declaration, pg. 3.

12. In January 2011, Kirkland and Messina formed KMGI, Inc. for the sole purpose of purchasing the Fortress loan. Sarantos Declaration, pg. 4. Kirkland and Messina are the sole shareholders of KMGI, Inc. Sarantos Declaration, pg. 4; Kirkland Declaration, pg.4.

13. In April 2012, Kirkland and Messina through, KMGI, Inc., acquired the Fortress note. Sarantos Declaration, pg. 4; Kirkland Declaration, pg. 4.

14. Following a three day bench trial in March 2014, the New York Court Decided in Sarantos' and Long's favor. Request for Judicial Notice, Exhibit B ("New

York Decision"); Sarantos Declaration, pg. 4-5. The New York Court found that the Subordination Agreement does <u>not</u> bar payment on the California Civil Judgment. New York Decision; Sarantos Declaration, pg. 4-5.

15. Shortly after the New York Court ruled in favor of Creditors and designated them as the prevailing party the Creditors returned to the Fresno County Superior Court and they filed a Motion to Amend the California Civil Judgment to add COCI to the Judgment, filed a Motion for Preliminary Injunction, and obtained a temporary restraining order, to stay COCI and Kirkland and Messina from taking certain adverse actions and filed a Motion to Appoint a Receiver. Sarantos Declaration, pg. 5. In response, one day prior to the motion to impose judgment upon COCI based upon alter ego and one week before the continued hearing, COCI and COAC filed for bankruptcy. Sarantos Declaration, pg. 5.

B. <u>Case Background</u>

16. COCI filed its Chapter 11 voluntary petition for relief on October 14, 2015. [DC-1]

17. COAC also filed its Chapter 11 voluntary petition for relief on October 14, 2015. COAC Case [DC-1].

18. On October 28, 2015, COCI filed its Schedules [DC-64] ("COCI Schedules") and Statement of Financial Affairs [DC-65] ("COCI SOFA").

19. COAC also filed its Schedules ("COAC Schedules") and Statement of Financial Affairs ("COAC SOFA") on October 28, 2015. COAC Case [DC-20].

20. Pursuant to the COCI Schedules COCI has an account receivable from COAC in the amount of $2,758,867.00. [DC-64].

21. On November 19, 2015, COCI filed its Amended Schedules [DC-149] (the "Amended Schedules"). In its Amended Schedules COCI reduced the account receivable from COAC from $2,758,867.00, to $565,693.03.

22. COAC listed its only assets as (1) 100% shares in COCI and (2) contingent and unliquidated claims against Clovis 500 Club et. al., [Fresno Superior

Court Case No. 15-CE-CG-02704] with an unknown value.  COAC Case [DC-20]. COCI has also listed an asset of contingent and unliquidated claims against Clovis 500 Club et. al., [Fresno Superior Court Case No. 15-CE-CG-02704] with an unknown value in its schedules. [DE -64].

23. COAC listed its only creditors as: KMGI, Inc. ("KMGI") in the amount of $24,290,150 on account of a promissory note; COCI in the amount of $2,758,867 on account of a "loan to [COAC] for payment of attorney's fees in California and New York state court litigation matters"; Elaine L. Long in the amount of $1,379,929.65 plus attorney fees on account of an "arbitration award"; George L. Sarantos in the amount of $1,379,929.65 plus attorney fees on account of an "arbitration award"; and Milbank Tweed Hadley & McCoy, LLP ("Milbank") in the amount of $1,070,212.69 on account of "Attorneys' Fees and Costs for representation in State Court Litigation." COAC Case [DC-20]. As of the date of this motion, COAC has not amended its schedules to reduce the creditor claim of COCI in the amount of $2,758,867.00.

24. COAC and COCI are co-debtors on the KMGI and Milbank debts. *See* COAC Schedules and COCI Schedules. *See also* proof of claim filed by KMGI in COCI case, [Claim No. 1] in the amount of $24,290,150, and proof and claim filed by KMGI in COAC Case, [Claim No. 1] in the amount of $24,290,150. KMGI is a co-debtor of the Millbank debt.

25. Prior to filing the Chapter 11 petitions for relief, Creditors filed a Motion to Amend Complaint to include Club One Casino, Inc., as Alter Ego of Club One Acquisition Corp and Memorandum of Points and Authorities in Support of Motion to Amend Complaint to include Club One Casino, Inc., as Alter Ego of Club One Acquisition Corp. Sarantos Declaration, pg. 5. Accordingly, Creditors assert that COAC and COCI are also co-debtors on the $1,379,929.65 plus attorney fees owed to Long and Sarantos on account of the Arbitration Award. In any event, Long and Sarantos are substantial creditors of both COAC and COCI.

26. Kirkland is the president, director, and 40% shareholder of COAC.

Kirkland Declaration. Kirkland is also the general manager, president and director of COCI. *See* Kirkland Declaration, pg. 2.

27. Immediately prior to filing the petitions Messina was the chief financial officer, secretary, director, and 40% shareholder of COAC, and was previously an officer and director of COCI, until his resignation on August 10, 2015. Kirkland Declaration.

28. Kirkland and Messina were the sole officers and directors of COCI prepetition, and Kirkland, Messina were the sole officers of COAC prepetition and along with Haig Kelegian, Sr. ("Kelegian"), were the sole directors of COAC prepetition.

29. William "Bill" Zender of Bill Zender & Associates, LLC ("Zender"), as alleged by Kirkland, is the newly appointed "independent" director of COCI and COAC. Kirkland Declaration, pg.3.

30. A Motion Pursuant to Section 363 of the Bankruptcy Code for Entry of an Order Approving the Engagement Contract of Bill Hughes and Glass Ratner Advisory & Capital Group, LLC ("Glass Ratner") [DC-51], is pending before the court and set for hearing December 17, 2015 at 10:00 a.m.. Bill Hughes is alleged to be COCI's new chief restructuring officer. Kirkland Declaration, pg.3. Hughes is an alleged officer, but not a director of COCI. Kirkland Declaration, pg.3.

31. COCI's directors are now Kirkland, Zender, and Kelegian, and its officers are Kirkland and Hughes. COAC's directors are Kirkland and Zender, and Kirkland is COAC's only officer.

32. COCI and COAC both use Baker, Peterson & Franklin, CPA, LLP as their accountant. *See* COAC SOFA and COCI SOFA.

33. COCI and COAC file consolidated tax returns. COCI and COAC provide consolidated financial statements. *See* COAC SOFA and COCI SOFA. COAC has no business activity, no employees, no bank accounts and no revenues. COCI pays COAC's bills, and COAC claims COCI's revenues as its own. Kirkland Declaration, pg. 3, ¶ 7.

34. On November 2, 2015, COCI filed its Motion For Order Directing Joint Administration Of Related Cases Pursuant To Federal Rule Of Bankruptcy Procedure 1015(b) [DC-71] (the "Motion for Joint Administration"). This motion is set for hearing on December 2, 2015 at 2:30 p.m.

35. On November 3, 2015, COAC filed its Motion For Order Directing Joint Administration Of Related Cases Pursuant To Federal Rule Of Bankruptcy Procedure 1015(b) [DC-22]. This motion is set for hearing on December 2, 2015 at 2:30 p.m.

C.  Legal Analysis

The power of the bankruptcy court to substantively consolidate derives from the court's general equity powers codified in 11 U.S.C. §105 . *In re Bonham,* 229 F.3d 750, 764 (9th Cir. 2000). "Substantive consolidation is a mechanism whereby the assets and liabilities of two or more related entities are pooled to create a single fund from which creditors of the combined estate may receive distributions." *In re Wade Cook Fin. Corp.,* 375 B.R. 580, 598 (B.A.P. 9th Cir. 2007) (citing *In re Bonham,* 229 F.3d at 764).[1] Essentially, it ignores the corporate form when entities are so intertwined that it makes no sense to devote resources to disentangle them. *Id.* Creditors of the consolidated entities are combined for purpose of voting on reorganization plans. *In re Bonham,* 229 F.3d at 764. The primary purpose of substantive consolidation is to ensure the equitable treatment of all creditors. *Id.*

The Ninth Circuit has adopted the Second Circuit's approach to substantive consolidation. *See Id.* When considering when to substantively consolidate courts should consider two factors (1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity when extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. *Id.* at 766 (citing cases). The presence of either factor is sufficient for a court to order substantive consolidation. *Id.*

---

[1] Substantive consolidation is also contemplated by Fed. R. Banker. P. 1015.

In the present case, the facts of the two estates satisfy both tests. Here, COAC does not exist without COCI. COAC is a shell corporation whose only real asset is the stock it holds in COCI. COAC has no bank account, no employees and no business activity. Prepetition, COAC and COCI had the same officers and directors –Kirkland and Messina (Kelegian was also a director from COAC, but not COCI). Post-petition, COAC and COCI have substantially similar directors –Kirkland and Zender (Kelegian is also a director of COAC, but not COCI), and substantially similar officers, Kirkland (Bill Hughes is the only other alleged officer of COCI, but not COAC). COCI has been used to pay COAC's bills. COAC has never maintained normal business books and records, but instead adopts those of COCI as its own.

Substantive consolidations of the two estates is in the best interest of creditors and the estates. Here, COAC owes COCI over $500,000.00. If these cases are substantively consolidated, Creditors ask that the Court eliminate that claim for plan purposes, so that this interdebtor claim is not classified, and does not receive any distribution under the plan.

It is in the best interest of creditors and the estate to reduce the costs associated with administering these chapter 11 estates including the costs of having two separate counsel, the costs that would otherwise be associated with filing two separate disclosure statements and plans of reorganization, the costs associated with filing separate monthly operating reports and two separate U.S. Trustee's fees. If these cases are consolidated, there is only need for one counsel, one monthly operating report, one U.S. Trustee fee, one disclosure statement and plan of reorganization, one accounting firm to preform services on behalf of the estates etc.

There is no logical reason not to substantively consolidate these two cases. COAC's assets consist of its 100% ownership interest in the stock of COCI and a contingent unliquidated claim associated with a law suit that it has commenced along with COCI against the 500 Club. COAC's only creditors are those which it is a co-debtor with COCI. There is no purpose in separately administering two separate

estates, when the assets and debts of COAC are those shared with COCI. Additionally, COAC has no ability to propose a plan of reorganization that would be independent of a plan of reorganization proposed by COCI. COAC has no business other than owning COCI.

As noted above, COAC and COCI have filed Motions for Joint Administration of the two cases. Joint administration only gets us half way to the best result. Substantive consolidation completes the process. Substantive consolidation of these two estates is the only logical conclusion. Even the Debtors' own arguments in their Motions for Joint Administration support substantive consolidation including: reducing costs; a single disclosure statement and plan of reorganization; the debtors are affiliates and under common control; debtors share common management; and debtors share common debt and creditors. *See* Motion for Joint Administration, pg. 3-4. Joint administration would still result in the unnecessary administrative burden of two monthly operating reports and two U.S. Trustees fees. Additionally, Joint Administration would still allow for these two debtors to be viewed as separate entities with separate assets and separate liabilities, which is not the case. COAC's assets and liabilities are those shared with COCI.

The equitable treatment of all creditors is best served by substantively consolidating the two estates so that the assets and liabilities of the two estates are pooled to create a single fund from which creditors of the combined estate may receive distributions under a plan of reorganization.

The benefits of substantive consolidation greatly outweigh any harm. Substantial debt is commonly owed by the debtors, and there is no prejudice to creditors in combining the estates of the debtors. In addition, substantive consolidation will substantially decrease administrative expenses of bankruptcy, such as additional cost of attorneys, financial advisors and accountants.

WHEREFORE, Creditors pray that the Court enter an Order substantively consolidating Club One Casino, Inc. Case No. 15-14017 and Club One Acquisition


1  Corp., Case No. 15-14021 under the primary case Club One Casino, Inc, Case No. 15-
2  14017, and that the Court:

3     (1)     Treat the assets of each Debtor estate as being a single estate;

4     (2)     Treat all claims as being a claim against the consolidated single estate,
5  preserving the priority of each creditor under §726;

6     (3)     Eliminate claims among the Debtors for plan purposes, so that these
7  interdebtor claims are not classified, do not vote, and do not receive any distribution
8  under the plan;

9     (4)     Eliminate duplicate claims by the same creditor filed against more than
10 one debtor; and,

11     (5)     Grant Creditors such other and further relief as is just and proper.

12 Dated: November 20, 2015     WALTER & WILHELM LAW GROUP,
a Professional Corporation

By: _____
Holly E. Estes,
Co-Counsel for Elaine Long and
George Sarantos

